# CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY *v.* LOWELL.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MINNESOTA.

No. 173.  Argued December 19, 1893. — Decided January 8, 1894.

The station of a railway near a large town contained platforms and other accommodations on each side of the tracks, with a double track between them on which many trains were moving both day and night.  There was an underground connection between the two by means of a public street, which was in a bad condition.  It was a rule of the company that "when a train is standing on a double track for passengers, trains from the opposite direction will come to a stop with the engines opposite to each other."  A passenger who was in the habit of travelling on the road and of stopping at this station arrived there in the rear car, in which a notice was posted, that passengers leaving the car by the forward end should turn to the right, and that those leaving by the rear should turn to the left, in each case landing the passenger on the platform, "and thus avoid danger from trains on the opposite track."  The passenger passed out at the forward end, where he found the collector, gave up his ticket, and passed out at the left, on the track, with the knowledge of the collector, and without any objection on his part.  In crossing he was struck by an engine coming from an opposite direction, which had not observed the rule to stop.  He brought suit to recover damages for the injuries which he had suffered.  The company set up the defence of contributory negligence.  Plaintiff, as a witness in his own behalf, testified that he had never seen the notice posted in the car, and that he had been in the habit of alighting on the left side, without objection.  When plaintiff rested, the defendant asked the court to instruct the jury to find a verdict for it on the ground that the contributory negligence of the plaintiff

was established as matter of law. The court declined, and the defendant introduced evidence, and did not renew his request, but excepted to such parts of the charge as related to the question of contributory negligence. Verdict and judgment being had for plaintiff, the case was brought here by writ of error. *Held*,

   (1) That there was no doubt of the gross negligence of the defendant;

   (2) That there was no obligation on the part of the plaintiff to cross the track by the underground public street;

   (3) That the plaintiff was not, under the circumstances, guilty of negligence in law, in turning to the left on leaving the car;

   (4) That the charge was, as a whole, sufficiently favorable to the defendant, and that the question of negligence was properly left to the jury.

THIS was an action at law for personal injuries received by the plaintiff Lowell while crossing the track of the defendant at Ridgeway station, within the limits of the city of St. Paul.

It appears by the bill of exceptions that the following facts were established by the evidence:

The defendant, on the 17th day of March, 1889, was a common carrier of passengers for hire, and was on that day operating a railroad between St. Paul and Minneapolis. One of the stations on the road was Ridgewood Park, within the corporate limits of St. Paul, the general course and direction of the road through such station being east and west.

There was a double track at that point and for some distance both east and west of it; the trains going east, or towards St. Paul, moved on the south track, and the trains going west, or towards Minneapolis, on the north track. There were many unscheduled trains — freight, transfer, and wild trains — moving back and forth on the tracks both day and night.

The tracks at Ridgewood Park station were about nine feet apart: the passenger trains were run on schedule time between the two cities, and passed this station; during the day there were many trains moving on both of these tracks; between the hours of nine and eleven in the evening there were only two passenger trains passing Ridgewood Park station, one going east and the other going west; there were no trains of defendant scheduled to meet at Ridgewood Park station. The west-going train, upon which plaintiff was a passenger, reached

Ridgewood Park at 10.10 P.M., and the only scheduled train that would pass this station going east was due fifteen minutes later, which fact was well known to the plaintiff.

The railroad company had erected two depots at Ridgewood Park station, one on each side of the tracks — one south of the south track and one north of the north track and opposite to each other; each of these depots was supplied with a platform for the accommodation of passengers getting upon and alighting from the cars, one of which platforms was on the south side of the south track and the other was on the north side of the north track.

The only depot used by the defendant was the one situated on the south side of the tracks; all the tickets were sold in the depot on the south side; telegraph office, baggage-room, and waiting-room were there, and the station on the north side was closed, and had never been used by the defendant in any way as a depot.

At the east end of each of these depots there was a flight of steps leading down about fifteen or twenty feet to Victoria Street, which at that point passed under the two tracks, the tracks passing over the street by means of an iron bridge; and it was possible for the passengers to go from one depot to the other by the way of these steps and Victoria Street; but Victoria Street on the 17th day of March, 1889, was not graded or in any way improved, but was a natural ravine passing under the tracks at Ridgewood Park station.

Victoria Street about the station and underneath the tracks was marshy, muddy, and wet at that time; the steps leading down on the north side from the north depot came down only to within two feet of the ground, and passing in front of the steps at the bottom thereof was a stream of water which ran from there over the surface and in a zigzag direction down Victoria Street and under the tracks.

This stream varied in width from two to six feet and in depth from three or four inches to two feet; the ground under the tracks at Victoria Street was uneven and irregular, and there were no lights or any illumination whatever along Victoria Street at that point and under the tracks, and the night

was dark. It was customary for all persons living on the south side of the tracks at the station to cross over the south-lying tracks in going to their homes, and not under the tracks by Victoria Street, which custom was well known to the defendant.

There was no planking between the two depot platforms, except at the easterly end of the platforms across the tracks at Ridgewood Park station, but the surface of the ground was occupied by the tracks and ties as on any other part of the road.

The platform on the north side was lighted by two large kerosene lamps on posts, and the south platform was furnished with the same kind and number of lamps, but there was conflicting evidence as to whether one of these lamps was burning on the night of the accident.

The north-side building was closed, but the platform on the north side was in good order for the embarkation and debarkation of passengers, and was of the same size as the one on the south side; the plaintiff was at the time of the accident, a man thirty-six years of age, in full possession of all his faculties; he lived in a house situated on the south side of the tracks, about one thousand feet west of the depots and about two hundred and fifty south of the tracks; he had lived there prior to the accident continuously for about six months, and the only way he could reach his home after alighting from defendant's train at the station, was to cross over the south-line track of the defendant's road, except through Victoria Street; he was in the habit of taking the cars at Ridgewood Park depot for St. Paul about twice each week during his residence at the point mentioned, and would return from St. Paul by the trains of defendant and debark at this station. In so doing plaintiff had always boarded and departed from the defendant's train on the south side of the same, as he did on the night the accident in question occurred; and he had worked as a laborer on the streets in the neighborhood of the depot, and was familiar with it and its surroundings.

On the afternoon of the 17th day of March, 1889, he purchased a round-trip ticket at the Ridgewood Park depot for

St. Paul and return, and went to St. Paul, leaving there on his return home at 10 P.M.; he was with a companion named Fosberg, both plaintiff and Fosberg riding in the smoking car, which was on the rear end of the train, and was a combination car, divided by a partition in the middle, the rear half being for baggage and the front half for passengers desiring to smoke.

The train was composed of an engine, tender, two passenger coaches, and this combination car; in each end of the smoking apartment of the combination car, there were posted up notices or signs in large printed letters as follows, which could be plainly seen and read by all passengers in the car: "Passengers leaving this car at the forward end will turn to the right; if at the rear end, will turn to the left, and avoid danger from trains on the opposite track."

Plaintiff could read English. He testified that he had never seen the sign; that he generally rode in the smoking car; that the train arrived at the Ridgewood Park station at about ten minutes past ten o'clock P.M. and pulled in with the cars opposite the north platform, and two ladies and five or six gentlemen alighted, all on the north side of the train and on the north platform; that there was a conductor, a ticket collector, and a brakeman on the train, and as the train stopped the plaintiff and Mr. Fosberg got up and passed out of the front door of the smoking car, Mr. Fosberg being first, and the plaintiff following.

On the platform they were met by the collector, who was standing in front of and a little to the north side of the door, and who asked for their tickets, which they delivered to him, Fosberg first and plaintiff after him. They immediately left the car on the south side and started across the space between the tracks and the south track towards the south platform, Fosberg being about ten feet in advance of plaintiff. The collector saw them getting off on the south side and said nothing to them, but immediately on receiving their tickets, entered the smoking car.

That before the plaintiff had time to alight from said car the train had begun to move slowly away from the station.

This conductor or ticket collector saw both Fosberg and the

plaintiff turn and step down the steps towards the south side of the car to cross over to the side station, and raised no objection, and did not caution either of them against so doing.

That plaintiff, in stepping down from said car, took hold of the iron railing on the end of the platform on the right-hand side, and stepped down with the left foot first and faced toward the west up the south-line track.

That plaintiff saw no train coming on the south-line track, and Fosberg, who had already crossed over the track ahead of him, neither saw nor heard any train coming from the west on the south-line track; that just as soon as plaintiff stepped from the car he started towards the station across the south-line track for the purpose of going to his home; that just as he was crossing the track he was struck by a wild train coming from the west and which was being run backwards on the south-line track, and was knocked a distance of thirty feet, falling upon the platform of the station a little to the east of the centre thereof.

Several witnesses swore that the train had a headlight burning at both ends, and several witnesses swore that they saw no headlight on the end approaching the east and the depot.

There was conflicting evidence as to the rate of speed at which the engine was moving before and at the time it reached the station, some witnesses putting it as high as twenty miles an hour and some as low as five or six. Several witnesses swore that the engine whistled for the station about a quarter of a mile before reaching it, and that its bell was rung all the way from where it whistled to the station, and several witnesses swore that they heard neither whistle nor bell. The crew of the engine on it at the time was an engineer, fireman, conductor, and brakeman.

Fosberg crossed the south track and got on the platform safely and before the arrival of the engine, and was about ten feet in advance of plaintiff, when he attempted to step across the south rail of the south track, and Fosberg, seeing the engine coming, called out, "Look out, Martin!" to the plaintiff, but

plaintiff was struck by the corner of the tender and knocked on to the south platform.

The crew who were on the wild train, consisting of the fireman, brakeman, and conductor, saw the west-going passenger train as it came into the station and as it stopped there to receive and discharge passengers, and knew that it stopped for that purpose. Plaintiff introduced general rule No. 66 of the defendant, in regard to the running of its trains, which was as follows: "When a train is standing on a double track for passengers, trains from the opposite direction will come to a stop with the engines opposite each other, and proceed slowly until trains are past."

The train did not in any way stop until it had run far past the station and until after plaintiff was struck.

The conductor of the passenger train, after seeing his passengers off the train on the north platform, gave the signal to his engineer to go ahead, and got upon the platform of one of the coaches, and, seeing the plaintiff and Fosberg going in the direction of the approaching engine, called to them as loud as he could to look out for themselves. There was an unobstructed view up the tracks to the west from any point at the Ridgewood Park depot of at least 1500 feet, and a train approaching could be seen that distance.

There was conflicting evidence as to whether the passenger train was moving westward or standing still when the engine from the west reached a point opposite the passenger engine.

The plaintiff, who was sworn as a witness in his own behalf, testified that in going in and out of this station he was in the habit of getting off the cars on the south side; that he had seen other people getting on and off in that way, and that no one ever objected to his doing this. He further testified, under objection, that he had seen people getting off upon the south side both before and after the accident; and that he never saw them get off on the north side and go down the steps and under the bridge. His companion that night, Fosberg, also testified that he had seen other people get off upon the south side. Upon the conclusion of the testimony on the part of the plaintiff, counsel for the defendant requested the court to in-

struct the jury to find a verdict for the defendant, upon the ground that the plaintiff was proven to have been guilty of contributory negligence in leaving the train upon the south side, in disobedience of the rules and notice of the defendant, and in not looking for, and seeing, the coming engine and avoiding the same. The court denied the motion, and counsel for defendant excepted. There was no evidence from either side showing, or tending to show, that any reason or cause existed for the plaintiff leaving the cars on the south side, instead of the north side, except as above set out. Upon the conclusion of the entire testimony in the case defendant's counsel did not renew his request to direct a verdict in his favor, but took exceptions to such portions of the charge as submitted to the jury the question of the contributory negligence of the plaintiff.

The case was submitted to the jury, who returned a verdict for the plaintiff in the sum of $8500, for which judgment was entered. Upon motion a new trial was ordered unless plaintiff would consent to remit $3000 from his judgment, which was done. The defendant thereupon sued out this writ of error.

*Mr. Charles E. Flandrau* for plaintiff in error.

I. The court was correct (if it had not been qualified) in its charge to the jury that the plaintiff could not recover, having violated the reasonable rules of the defendant, and alighted from the cars in a manner prohibited by the defendant. *Bancroft* v. *Boston & Worcester Railroad*, 97 Mass. 275; *Forsyth* v. *Boston & Albany Railroad*, 103 Mass. 510; *Gonzales* v. *Harlem Railroad*, 38 N. Y. 440; *S. C.* 98 Am. Dec. 58; *Zebe* v. *Pennsylvania Railroad*, 33 Penn. St. 318.

II. The mere fact that the plaintiff may have entered or alighted from the cars on the south side, instead of upon the platform, and that he may have seen some others do the same thing, cannot be construed in any way to be a license or a consent on the part of the defendant for the plaintiff to repeat the act at its expense. *Wheelwright* v. *Boston & Albany Railroad*, 135 Mass. 225, 229.

III. The plaintiff was clearly guilty of.contributory negligence, even if he had not been at fault in alighting on the south side of the train, because when he got upon the space between the two tracks, before he attempted to cross the south track, it was his duty to exercise all his functions of seeing and hearing to ascertain whether it was safe for him so to do. *Schofield* v. *Chicago, Milwaukee & St. Paul Railway,* 114 U. S. 615; *Chaffee* v. *Old Colony Railroad,* 17 R. I. 658.

The train was evidently very close to the plaintiff when he stepped out upon the south track, because he was immediately struck by it, and there can be no reason why he did not see it and avoid it, except that Fosberg, his companion, had just got across in time to save himself, about ten feet ahead of him, and he was in a great hurry to catch up with him; there is no other explanation of his reckless conduct.

*Mr. M. D. Munn,* (with whom was *Mr. Cushman K. Davis* on the brief,) for defendant in error.

Mr. Justice Brown, after stating the case, delivered the opinion of the court.

Practically the only question in this case is whether the evidence so clearly showed the plaintiff to have been guilty of contributory negligence as to entitle the defendant, as matter of law, to an instruction to the jury to return a verdict in its favor.

It was not seriously contended that the defendant was free from fault in failing to stop its train, in compliance with its own rule, which demanded that " when a train is standing on a double track for passengers, trains from the opposite direction will come to a full stop, with the engines opposite to each other, and proceed slowly until trains are past." In view of the frequency of accidents occurring to passengers crossing one track at a station, after alighting from a train standing upon another track, the rule is .doubtless a proper one, and if it had been observed on that evening, this accident would probably not have occurred. In determining whether the plaintiff was so clearly guilty of contributory negligence as to

entitle the defendant to a verdict, we are bound to put upon the testimony the construction most favorable to him, and to assume that the eastward bound train did not stop opposite the other engine, but that it was passing at the rate of twenty miles an hour; that it gave no signal by whistle or bell, and carried no headlight upon the rear or east end of the engine. If such were the facts, there could be no doubt of the gross negligence of the defendant.

We are of the opinion that there was no absolute obligation on the part of the plaintiff to cross the track by way of the ravine known as Victoria Street. To do this would have required him to descend a flight of steps at the east end of the station, about fifteen feet to the level of the street, which was not graded or in any way improved, but was a natural ravine passing under the tracks at this point. There was a stream of water varying in width from two to six feet, and in depth from two or three inches to two feet, running over the surface of the street under such tracks. The ground beneath the tracks was marshy, muddy, and wet at the time; the street was uneven and irregular, and there were no lights or other illumination along the street at that point, and the night was dark. It seems to have been the universal custom for all persons living on the south side of the tracks to cross over the tracks in going to their homes, and not under the tracks by Victoria Street. Under such circumstances, the plaintiff had a right to make use of the customary mode of alighting and reaching his home.

The case resolves itself into the question, then, whether the plaintiff was, as matter of law, guilty of negligence in failing to get off the train on the north side, there being in the opinion of the court no question that if he had alighted upon the platform and waited until the train passed he would not have been injured. There was, it is true, a notice conspicuously posted at each end of the smoking car, in which plaintiff was riding, requiring passengers leaving the car at the forward end to turn to the right and at the rear end to turn to the left, and avoid danger from the trains on the opposite track. There was testimony tending to show that this notice had

never been read by the plaintiff. · Assuming, however, that he was bound to read it, and was chargeable with knowledge of its contents, there was other testimony tending to show that it was habitually disregarded by passengers with the acquiescence of the conductor and the servants of the road about the station. There was evidence that plaintiff and his companion Fosberg were met upon the platform of the car by the collector, who asked for their tickets, which were delivered to him; that the collector saw them get off on the south side and said nothing to them, but immediately upon receiving their tickets entered the smoking car; that no objection was raised to their getting off upon the south side, and that other people were in the habit of getting off in the same way. Now if the custom of passengers to disregard the rule was so common as to charge the servants of the road with notice of it, then it was either their duty to take active measures to enforce the rule, or to so manage their trains at this point as to render it safe to disregard it. A railway company does not discharge its entire obligation to the public by a notice of a certain requirement, permitting the requirement to be generally disregarded, and then proceeding upon the theory that every one is bound to comply with it. If, in such case, an accident occur, the defendant should not be allowed to rely exclusively upon a breach of its regulation. In this particular the case resembles that of the *Dublin &c. Railway Co.* v. *Slattery*, 3 App. Cas. 1155, in which the House of Lords held that a notice not to cross the tracks which the company had permitted to fall into desuetude and made no attempt to enforce, did not debar the plaintiff, who had disregarded it, from a recovery. Had the plaintiff complied with the notice and alighted upon the platform, he would still have been obliged to cross the track with the same possibility of being struck by a passing train that confronted him in this instance. There was, in addition to this, some evidence to go to the jury that it was customary for persons living on the south side of the track to get off the train on that side, as the plaintiff did, and none that they were in the habit of crossing by way of Victoria Street.

In his manner of leaving the train there seems to have been no negligence. He took hold of the iron railing at the end of the platform on the right-hand side, stepped down with the left foot first and faced towards the west on the south-line track, saw or heard no train coming upon that track, and supposed that he was perfectly safe in crossing, as he knew that no train was then due. It is in this connection, and under these circumstances, that the question of the necessity was to be considered. While there may have been nothing which the law would recognize as a special necessity that evening for his getting off on the south side, if it were usual and customary for passengers to do so, and it was not manifestly dangerous, and the plaintiff had been in the habit twice each week for six months prior thereto of alighting in the same manner, and in doing this he took the precaution to get off in such a way, that if a train properly lighted had been coming, he could not have failed to see it, it would be a question for the jury whether he was guilty of contributory negligence in disregarding the notice. In this view it is possible that the charge of the court to the effect that unless there was some existing necessity established by the testimony authorizing the plaintiff to alight from that side of the train and cross over the tracks, he could not recover, was too favorable to the defendant. But, however that may be, it seems to have been subsequently qualified by the court saying that if passengers embarking upon or alighting from the train at that point went customarily over that route, then the mere fact that the plaintiff did cross there in order to reach his home cannot of itself be considered negligence, and leaving it for the jury to say whether, under the circumstances of this case, the plaintiff should not have obeyed the rules and regulations of the company, and have alighted upon the platform. The charge as a whole was sufficiently favorable to the defendant, and the question of negligence was a proper one for the jury — in other words, proof that the plaintiff violated the regulations of the company, even without the excuse of a cogent necessity, will not as matter of law debar him from a recovery.

The judgment of the court is, therefore, *Affirmed.*

Mr. Justice Gray and Mr. Justice Shiras concurred in the result, because the only ruling in matter of law requested or made at the trial on the question whether the defendant was entitled to a verdict, by reason of contributory negligence of the plaintiff, was upon a motion made at the close of the plaintiff's evidence and before the defendant had rested its case, and therefore, by the settled rule, could not be the subject of exceptions or error; *Columbia Railroad* v. *Hawthorne*, 144 U. S. 202, 206; *Bogk* v. *Gassert*, 149 U. S. 17, 23; and because the instructions given and duly excepted to were sufficiently favorable to the defendant.