# WARNER

*v.*

# THE BALTIMORE AND OHIO RAILROAD COM-
# PANY.

RAILROADS; CONTRIBUTORY NEGLIGENCE; PASSENGERS.

1. Contributory negligence is necessarily implied from a person's ex-
   posure of himself to a position of obvious peril, unless the cir-
   cumstances shown by him or on his behalf are such as tend to
   disprove the inference, whereupon it becomes a question for the
   jury.
2. The presence of a railroad track is itself a notice of danger, and no
   man of ordinary intelligence has the right to go upon it without
   taking the precaution of stopping and looking for approaching
   trains.
3. A passenger or intending passenger is equally with other persons
   bound by such rule, except where in the action of the common
   carrier he has been reasonably induced to believe that there is
   no occasion for its observance.

No. 452.   Submitted May 14, 1895.   Decided October 8, 1895.

HEARING on an appeal by the plaintiff from a judgment
on a verdict for defendant directed by the court, in an action
to recover damages for the alleged negligent killing of plain-
tiff's intestate.  *Affirmed.*

The COURT in its opinion stated the case as follows:

This is a suit by John W. Warner, administrator of Joseph
W. Collis, deceased, to recover damages for the alleged un-
lawful killing of the appellant's intestate through the negli-
gence of the agents and employees of the appellee.   On
the morning of June 22, 1893, Joseph W. Collis was struck
and instantly killed on the track of the Baltimore and Ohio
Railroad Company at a small station just north of the city
of Washington known as University station, by the engine
of an express train of that company coming from the north-

west in the direction of Washington, while he was apparently engaged in an attempt to board another train of the same company, an accommodation train, standing or slowly moving upon the adjacent track and which was bound in the opposite direction. It appears that on the day before he had purchased what is known as a round-trip ticket, good for thirty days, by the coupon of which, found upon his person after his death, he was entitled to be conveyed from University station to a neighboring station north of it known as Forest Glen. At University station there is a double track running for about a mile or upwards in a straight direction nearly due north and south, and with an uninterrupted view of the road for that distance towards the north. The western track is used for trains moving towards Washington from the north and west, the eastern track for trains going north and west from Washington. On the west side of the road is the ticket office, with a platform around it more or less covered. On the east side is a smaller uncovered platform. About 1,600 feet to the north of the station is a post where it is usual to sound the whistles of engines coming south on the western track, so as to give timely notice of their approach at University station.

About 9 o'clock of the morning of June 22, 1893, the accommodation train referred to had come out from Washington, and either had stopped or was about to stop at University station ; for the testimony is conflicting as to whether it had actually come to a stop ; and it does not appear whether, when it did come to a stop, any passenger disembarked, or that there was any other person than the deceased to board the train. It is presumed that Collis desired to take the train in order to be conveyed to Forest Glen. He had been seen standing for some time on the western platform ; and as the train which he seemed desirous to take came into the station, he started to cross a plank walk which connected the two platforms, presumably so as to enter the train from the eastern platform, from which most easy and convenient access was had to it. His way,

however, seems to have been blocked by the incoming train before he could effect a crossing; and thereupon he deviated obliquely from the plank walk, going southward upon the western track and seemingly intending to gain access to the train from the western side, the purpose of the oblique movement apparently being to bring him into line with the platform or entrance landing of one of the cars of the train. An express train from the west was moving south at the time on the western track at the rate of about forty or fifty miles an hour. There is conflict of testimony as to whether the whistle of its engine had been sounded at the whistling post north of the station, which has been mentioned. Immediately, however, before Collis was struck, the engineer of the express train sounded the danger signal, consisting of two or three sharp, quick and shrill blasts from the whistle of the engine; but it is controverted whether this was done in time to be of any service. Collis was struck and killed while his foot was still on the easternmost rail of the western track.

The only eye-witness of the transaction was a passenger in the accommodation train, although there were other witnesses introduced on behalf of the plaintiff to show that no whistle had been sounded at the whistling post.

On behalf of the plaintiff evidence was also introduced of the existence of a rule of the railroad company to the effect that, whenever a train was standing at a station engaged in receiving or discharging passengers, no other train should attempt to pass the station until the former had commenced to move, or until its conductor had signalled that other trains might proceed. On behalf of the defendant it was testified that this rule had become obsolete and impracticable; and it was argued that, even if it was in force, it was not applicable to the circumstances of this case, and that it did not appear that the deceased had any knowledge of its existence or had acted upon the faith of it. There was testimony also on behalf of the defendant to controvert the inference of negligence from its alleged failure to sound the

whistle in due time; but into the details of this testimony it is unnecessary here to enter.

Upon the case as thus made the defendant moved for an instruction to the jury to return a verdict for the railroad company; and the instruction was given, and a verdict was rendered, upon which judgment was duly entered. To the ruling of the court exception was taken on behalf of the plaintiff; and the case is now here upon his appeal.

*Mr. Rodolphe Claughton* for the appellant:

1. Intestate, having a ticket issued by the appellee, was, at the proper time, and at the proper station, proceeding to take a train then and there waiting for his reception. Intestate was a passenger. *Railroad Co.* v. *Galliher*, 89 Va. 643; *Railroad Co.* v. *Rector*, 104 Ill. 301.

2. It was necessary for intestate to cross appellee's tracks in order to take his train; and, in making this transit intestate was not required to look for trains approaching on the tracks which he was obliged to cross. *Wheelock* v. *Railroad Co.*, 105 Mass. 208; *Railroad Co.* v. *White*, 88 Pa. St. 333; *Terry* v. *Jewett, Receiver*, 78 N. Y. 343; *Brassell* v. *Railroad Co.*, 84 N. Y. 246; *Railroad Co.* v. *State*, 60 Md. 463; *Railroad Co.* v. *Anderson*, 72 Md. 529; *Jewett, Receiver*, v. *Klein*, 27 N. J. Eq. 550; *Railroad Co.* y. *Shean*, 18 Colo. 368.

3. As there was no evidence that intestate saw, or knew of, or had warning of the approach of the train which killed him; and, as appellee, under the circumstances of this case, was guilty of gross negligence in running its train past the station, it was manifest error for the trial court to direct a verdict for the defendant. *Railroad Co.* v. *Powers*, 149 U. S. 43; *Gardner* v. *Railroad Co.*, 150 U. S. 349.

*Mr. Geo. E. Hamilton* and *Mr. M. J. Colbert* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court :

The meagreness of the testimony in behalf of the plaintiff in this case must be apparent to every one. It was probably unavoidable; for, as we have stated, there was only one eye-witness of the transaction, and he naturally could have no knowledge and could give no explanation of the circumstances that induced the deceased to place himself in the evidently perilous situation in which he met his death. The station where the accident occurred appears to have been but little frequented, except perhaps at certain hours of the day. It does not appear that there were any persons, other than the deceased, present at the station at the time of the accident; and it does not seem that there are any houses or population in the immediate neighborhood. It is the misfortune, therefore, of the plaintiff's case that he has no witnesses sufficiently to substantiate it, and that the case itself is almost of necessity based upon inference and conjecture.

There is testimony, it is true, on behalf of the plaintiff sufficient to go to the jury, however weak it may be in fact, upon the question of the defendant's negligence. Whether the engineer of the express train took the ordinary and usual and most reasonable precaution of sounding the whistle of his engine at the place prescribed for him to do so ; whether it was due care and caution on his part to run his train into and by this station at the rate of speed at which he did run it ; whether the danger signal was given in due time ; and whether the engineer should not have stopped his train before entering the station ; and whether he could not have stopped it anyhow in time to prevent the disaster which supervened, are all questions upon which the verdict of a jury might perhaps properly have been solicited ; although, as we have intimated, the verdict, if in favor of the plaintiff, would undoubtedly be based in a great measure upon conjecture, and conjecture is not a proper basis for judicial determination.

But we do not understand the ruling of the trial court in this case to be founded upon the insufficiency of the proof of the defendant's negligence, but upon the apparent contributory negligence of the deceased himself, and the total failure of the plaintiff's proof to excuse it or to account for it.

That the deceased placed himself in a position of obvious peril, is manifest; and that his death was the result immediately of his own voluntary act, is too clear for any controversy. If he was justified by the circumstances in so exposing himself to danger, and these circumstances were such as to relieve him from the imputation of contributory negligence, it is incumbent on the plaintiff to adduce proof to that effect. For contributory negligence is necessarily implied from a person's exposure of himself to a position of obvious peril, unless the circumstances, to be shown by him or on his behalf, are such as tend to disprove the inference, whereupon it becomes a question for a jury. Now, we fail to find in the present case any evidence whatever to rebut the presumption of negligence which the law infers from the conduct of the deceased.

It may be assumed that the deceased was entitled to the immunity and protection due from a common carrier to its passengers. But the extent of this immunity and of this protection will differ under different circumstances. It certainly cannot be claimed with reason that the immunity extends so far as to guarantee all the acts of a person who has in his possession a ticket entitling him to transportation. When the common carrier has provided all the appliances that can reasonably be required from it, no further liability on its part can accrue to the benefit of the passenger or proposed passenger until the latter manifests by some overt act that he proposes forthwith to exercise the right of transportation to which he has become entitled. In exercising this right the passenger must also exercise the ordinary care and caution which any reasonable man would exercise under similar circumstances. He is not entitled

with impunity to stand upon or cross the tracks of a rail-road company, or to enter its trains at an unusual place or in an unusual way, or to leave them in any different place or way, or otherwise to disregard the usual safeguards which every person of reasonable mind and sufficient in-telligence recognizes as right and proper to be observed when dealing with the modern instrumentalities of rapid transit, unless there has been some inducement, express or by implication, held out by the common carrier or its agents that one may depart therefrom without danger. A course of conduct pursued or tolerated may amount to such in-ducement. Usage or custom may constitute an induce-ment ; and so may the special necessities of any situation. Various cases that have been cited in the argument of this case are based upon this theory, such as the *Baltimore and Ohio Railroad Company* v. *Hauer*, 60 Md. 463 ; *The Phil., Wilm. & Baltimore Railroad Co.* v. *Anderson*, 72 Md. 529 ; *Terry* v. *Jewett*, 78 N. Y. 343 ; *Jewett* v. *Klein*, 27 N. J. Eq. 550, and *Atchison, Topeka and Santa Fe Railroad Co.* v. *Shean*, 18 Col. 368. In all these cases it appeared that there was assurance of some kind, direct or indirect, ex-press or implied, by the common carrier to the person in-jured that the latter might do with safety what he assumed to do. But in the absence of any such assurance, we fail to see, either from reason or from authority, why a com-mon carrier should be held responsible for the departure of a passenger or intending passenger from the ordinary rules of prudence and common sense.

It has been repeatedly said that the very presence of a railroad track is itself notice of danger ; and no man of or-dinary intelligence has the right to go upon it without tak-ing the ordinary precaution of stopping and looking for approaching trains. A passenger or intending passenger is equally with other persons bound by this rule, except where, by the action of the common carrier, he has been reasonably induced to believe that there is no occasion for its observance. Where he has been induced to alight from

a car on the side opposite from the platform, although the presence of another track there and the possibility of the passage of other trains on that track constitute an element of danger, he is entitled to immunity in consequence of the inducement. So, where he must cross a track in order to take another train to continue his journey, he is entitled to presume that he may do so in safety. And numerous other instances may be cited from adjudged cases in which parties have been held entitled to recover for injuries sustained by them, when it appeared that they risked danger in consequence of representations held out to them that the situation was free from danger. But where there has been no inducement or representation of any kind, and a person has by his own voluntary act, as in the present case, assumed a position of obvious danger, although no doubt the deceased did not fully realize the extent of his danger and his sad mishap was in all probability the result of some sudden impulse that induced him to forget or ignore the danger for the time, yet his action was not any the less contributory negligence in law, and it should not be charged to the account of the defendant. There is total failure of proof on the part of the plaintiff to show any inducement by the defendant to the deceased that would tend in any manner to justify or excuse the action of the latter. This, as we have intimated, may be his misfortune rather than his fault; but whatever may be the cause of it, the fact exists, and we cannot ignore it.

We regard our conclusion in this case as fully supported by one of the latest utterances of the Supreme Court of the United States upon the subject, the case of *Elliott* v. *Chicago, Milwaukee and St. Paul Railroad Co.,* 150 U. S. 245, in which the substantial facts were not very unlike those of the present case. There the Supreme Court of the United States, by Mr. Justice Brewer, said:

" We are of the opinion that the deceased was guilty of contributory negligence, such as to bar any recovery. It is true that questions of negligence and contributory negli-

gence are ordinarily questions of fact to be passed upon by a jury ; yet when the undisputed evidence is so conclusive that the court would be compelled to set aside a verdict returned in opposition to it, it may withdraw the case from the consideration of the jury, and direct a verdict. *Railroad Co.* v. *Houston*, 95 U. S. 697 ; *Schofield* v. *Chicago, Milwaukee and St. Paul Railroad Co.*, 114 U. S. 615 ; *Delaware, Lackawanna, &c., Railroad Co.* v. *Converse*, 139 U. S. 469 ; *Aerkfetz* v. *Humphreys*, 145 U. S. 418.

" What then are the facts concerning the accident ? It took place at a station called Meckling, a hamlet of two or three houses, and of so little importance that at the time the company had no station agent there. The main track of the defendant's. road ran eastward and westward in a straight line, and the ground was level.   *   *   *

" It thus appears that the deceased, an experienced railroad man, on a bright morning, and with nothing to obstruct his view, starts along and across a railroad track, with which he was entirely familiar, with cars approaching and only 25 or 30 feet away, and before he gets across that track is overtaken by those cars and killed. But one explanation of his conduct is possible, and that is that he went upon the track without looking to see whether any train was coming. Such omission has been again and again, both as to travellers on the highway and employees on the road, affirmed to be negligence. The track itself, as it seems necessary to iterate and reiterate, is itself a warning. It is a place of danger. It can never be assumed that cars are not approaching on a track, or that there is no danger therefrom. It may be as is urged, that his motive was to assist in getting the hand car out of the way of the section moving on the siding. But whatever his motive, the fact remains that he stepped on the track in front of an approaching train, without looking or taking any precautions for his own safety.

" This is not a case in which one, placed in a position of danger through the negligence of the company, confused

by his surroundings, makes perhaps a mistake in choice
as to the way of escape, and is caught in an accident.
For here the deceased was in no danger.  He was stand-
ing in a place of safety on the south of the main track.
He went into a place of danger from a place of safety, and
went in without taking the ordinary precautions impera-
tively required of all who place themselves in a similar po-
sition of danger.   The trial court was right in holding that
he was guilty of contributory negligence."

The well-known rules of law here repeated by Mr. Jus-
tice BREWER would seem to apply with equal force to the
case before us.   In this case as in that, there is but one
possible explanation of the conduct of the deceased; and
that is either that he went upon the track without looking
to see whether any train was coming, when, if he had taken
that ordinary and necessary precaution, he could not fail to
see the express train that was coming down upon the track,
or else having looked and seen that train, he took the
chances of being able to cross the track before it reached
him.   It is true that here the deceased intended to board
the defendant's train as a passenger, and was neither an or-
dinary passenger on the highway nor an employee of the
road; but we do not understand that a person intending to
become a passenger on a train is thereby relieved, any
more than other persons, from the observance of the ordi-
nary rules of prudence.   It is only when the passenger has
placed himself actually or constructively in the charge of the
common carrier that he becomes entitled to all the immu-
nities of a passenger; and he may not even then disregard
the ordinary safeguards, unless there has been inducement
or representation to him that he may do so with safety.   We
presume that a person could not hold a railroad company
to liability if he alighted from a car on the wrong side, on
an adjacent track, instead of the platform on the other side,
and was thereby injured, unless there was inducement to
him from the company to do so; and a person intending to
become a passenger can be in no better position than one

who desires to leave a train.    A common carrier is bound
to very great care and caution towards its passengers ; but
these are not therefore entitled to disregard the ordinary pre-
cautions required of prudent men in their situation, so as to
charge the common carrier with liability for the injuries sus-
tained by them in consequence of such disregard.    It is the
absence of all proof here to show inducement on the part of
the railroad company to the deceased to do what he did
that compels us to hold him to the inference that must
necessarily be drawn from his conduct in the absence of
such inducement, or of testimony tending to show its ex-
istence.

· The case of the *Chicago, Milwaukee and St. Paul Rail-
way Co.* v. *Lowell,* 151 U. S. 209, which was decided by
the Supreme Court of the United States within a short time
after the Elliott case, above cited, was that of a passenger
who was injured in alighting from a train, by getting off a
car on the side next to an adjacent track and being struck
by a train moving on that track while he was attempting to
cross it.    The trial court in that case had left the issue of
contributory negligence on the part of the plaintiff, as well
as of negligence on the part of the defendant, to the jury,
which found for the plaintiff; and the Supreme Court of the
United States, in an opinion by Mr. Justice BROWN, sus-
tained the ruling.    But we do not understand this decision
to be antagonistic to that in the Elliott case, or inconsistent
therewith.    The case of the *Railway Company* v. *Lowell*
plainly falls into the category of cases, to which reference
has already been made, in which there was inducement or
representation by the railroad company that the act, which
resulted in injury, could be done with safety.    In that case
it was shown that there was a rule of the company posted
up in the cars which directed passengers to alight on the
side more distant from the adjoining track, and thus to avoid
danger from trains passing on that track.    But the court
said :

" Assuming that the plaintiff was bound to read this rule

and was chargeable with knowledge of its contents, there was other testimony tending to show that it was habitually disregarded by passengers with the acquiescence of the conductor and the servants of the road about the station. There was evidence that the plaintiff and his companion, Forsberg, were met upon the platform of the car by the collector, who asked for their tickets, which were delivered to him ; that the collector saw them get off on the south side (next to the adjacent track) and said nothing to them, but immediately upon receiving their tickets entered the smoking car ; that no objection was raised to their getting off on the south side, and that other people were in the habit of getting off in the same way. Now, if the custom of passengers to disregard the rule was so common as to charge the servants of the road with notice of it, then it was either their duty to take active measures to enforce the rule, or to so manage their trains at this point as to render it safe to disregard it."

Plainly there was testimony in this case tending to show a usage, sanctioned or acquiesced in by the railroad company, which the plaintiff only followed. In other words, there was inducement to the plaintiff by the railroad company that he might do with safety that which he attempted to do. But that is not the present case.

Under the testimony adduced in the present case, we do not think that it was error in the trial court to direct a verdict for the defendant ; and we must sustain that ruling.

*The judgment of the court below must therefore be affirmed, with costs ; and it is so ordered.*