# DASHIELL

*v.*

## THE WASHINGTON MARKET CO.

### CONTRIBUTORY NEGLIGENCE; ELEVATORS.

The owner of a building containing a number of tenants who had been warned not to use an elevator in the building in the absence of the elevator boy, cannot be held liable for the death of a tenant's employee who undertook to operate the elevator himself and was killed, even though the elevator was in a dangerously unsafe condition and it was not shown that the decedent had knowledge of such warning.

No. 594. Submitted November 10, 1896. Decided February 2, 1897.

HEARING on an appeal by the plaintiff from a judgment on a verdict directed by the trial court in an action to recover damages.   *Affirmed.*

The facts are sufficiently stated in the opinion.

10 Ct. App.—7

*Mr. A. S. Worthington, Mr. Richard C. Thompson* and *Mr. Charles L. Frailey* for the appellant:

1. The negligence of the appellee was sufficiently established to maintain the action.

The evidence shows that the door fell on the plaintiff's intestate, Sakers. The mechanism of the door and elevator was such that when either one was at the ground the other should have been at or very near the top, if in proper working order. It appeared that immediately after the accident the elevator was at rest about four feet from the ground, and the door, after striking Sakers, had gone "all the way down solid to the ground," and that before it struck him it "went faster than the elevator went up." These conditions could not have existed had the door not fallen.

The elevator door had fallen about two weeks before this accident, and this was due to the bad condition of the apparatus connecting the door with the elevator; and the cord, which was a mere string, used in tying the rope connecting the door with the elevator had frequently become untied prior to the accident to Sakers, and the appellee's agent had sought the aid of other persons to tie this rope. Thus the evidence shows *prima facie* negligence on the part of the defendant. *District of Columbia* v. *Gray*, 6 App. D. C. 320; *Biers* v. *Standard Manufacturing Co.*, 130 Pa. St. 447; *White* v. *Railroad Co.*, 144 Mass. 404; *Kearney* v. *Railway*, L. R. 6 Q. B. 759; 50 Amer. Rep. 550; 6 Amer. St. Rep. 793–5.

2. The question of contributory negligence should have been left to the jury, the evidence clearly showing uncertainty as to it. *Railroad Co.* v. *Golway*, 6 App. D. C. 469; *Railroad Co.* v. *Powers*, 149 U. S. 45.

In the following cases there seems to have been less doubt of the plaintiff's contributory negligence than in the case at bar, but it was held in each of them that the question was one for the jury. *Johnson* v. *Railroad Co.*, 70 Pa. St. 357; *Railroad Co.* v. *Ward*, 47 N. J. Law, 560; *Keilt* v. *Railroad Co.*,

75 Hun, 579; *Railway Co.* v. *Van Steinburg,* 17 Mich. 99; *Railroad Co.* v. *Coulbourn,* 69 Md. 360; *Railroad Co.* v. *Maugan,* 61 Md. 53.

Thus it cannot be said that only one reasonable view can be taken of the evidence and of its every intendment, and that view is utterly opposed to the plaintiff's right to recover, which state of facts must exist before the court can direct a verdict for the defendant. *Railroad* v. *Carrington,* 3 App. D. C. 108; *Railroad* v. *Snashall,* 3 App. D. C. 432; *Railway Co.* v. *Ives,* 144 U. S. 408; *Gardiner* v. *Railroad Co.,* 150 U. S. 349.

Even if the plaintiff's intestate attempted to get off the elevator while it was in motion, such act for the purpose of escaping impending danger was not, in contemplation of law, contributory negligence, though it may have, in fact, contributed to his death. *Railroad Co.* v. *Hickey,* 5 App. D. C. 471; *Shankenberry* v. *Railroad Co.,* 46 Fed. Rep. 177; Beach Contrib. Neg., Sec. 40–41; Ray Neg. Imp. Duties, Sec. 127; *Railroad Co.* v. *McDonald,* 152 U. S. 281.

*Mr. William Birney* and *Mr. J. J. Darlington* for the appellee:

The conduct and actions of the plaintiff's intestate being proven by the plaintiff himself, and being free from doubt, dispute or the possibility of question, the only possible remaining inquiry is: Could reasonable men differ in opinion whether they contributed to the accident, and were negligent? *Howes* v. *District of Columbia,* 2 App. D. C. 188; *Gas Light Co.* v. *Poore,* 3 App. D. C. 127; *Warner* v. *Railroad Co.,* 7 App. D. C. 79.

"It is unquestionably the law that, if it appear by the plaintiff's evidence that his own negligence caused the injury of which he complains, or contributed to it in such a way that, but for it, the plaintiff would not have received harm from the defendant's negligence, the court should non-suit, and error may be assigned upon its refusal."

*Railroad* v. *Ward*, 47 N. J. Law, 562; *Railroad. Co.* v. *Converse,* 139 U. S. 472.

What harm or injury could by any possibility have befallen the plaintiff's intestate from any negligence possibly imputable to the defendant, except for his own act, in no way superinduced by the defendant, of attempting to jump from a rapidly ascending elevator?

Cases in this court, and in. the Supreme Court of the United States, in which a direction to find for the defendant upon the ground of contributory negligence, under facts by no means so conclusive as in the case at bar, are abundant. Among them, and as fair examples, may be cited, *Railroad Co.* v. *Schumacher,* 152 U. S. 77; *Hurdle* v. *Railroad Co.,* 8 App. D. C. 120; *Railroad Co.* v. *Jones,* 95 U. S. 439; *Railroad Co.* v. *Wright,* 7 App. D. C. 295; *Edgerton* v. *Railroad Co.,* 6 App. D. C. 516; *Stearman* v. *Railroad Co.,* 6 App. D. C. 46; *Railroad Co.* v. *Didzoneit,* 1 App. D. C. 482.

In the case at bar, the act of the plaintiff's intestate in jumping out of an elevator in rapid motion was more strikingly dangerous and negligent than was the act of the plaintiff in the case of *Railroad Co.* v. *Wright,* 7 App. D. C. 295. It was, moreover, clearly an act in no way superinduced by the defendant, nor in any wise justified by any conduct of either the defendant, or of any person or persons whomsoever.

As will readily appear upon any examination of them, none of the authorities collected by the industry of the counsel for the plaintiff are in conflict with the ruling of the court below.

Mr. Justice MORRIS delivered the opinion of the Court:

This is a suit for damages for the alleged negligence of the appellee, the Washington Market Company, in causing the death of the appellant's intestate, Albert R. Sakers. The case was determined in the Supreme Court of the District of Columbia by a peremptory instruction to the jury to render

a verdict tor the defendant on the ground that the accident which caused the death was due to the negligence of the deceased himself; and from this ruling the plaintiff has prosecuted the present appeal.

The substantial facts, as developed by the record, would appear to be these: The appellee, the Washington Market Company, owns and operates the Center Market, in the city of Washington, in which many persons, as its tenants, together with their employees, carry on the business of marketing. Among these persons was one Brown, in whose employment was the plaintiff's intestate, Sakers, a bright and intelligent boy of about the age of nineteen years, and who had been in the employment of Brown in the market house for upwards of a year before the occurrence of the accident which caused his death.

In the market building was an elevator, used for the purpose of conveying the tenants and their employees from one floor to another of the building in the course of their business, the fact apparently being that, while the main business was conducted on the lower or ground floor of the market, the dealers kept their supplies, or part of them, on the second or upper floor, to which access was had by this elevator, as well as also by means of a staircase. There was an elevator boy employed by the appellee to operate the elevator, but this boy was often absent, and in that event the tenants and their employees often operated the elevator for themselves. Against so doing, however, they had been warned by the officers of the company; but whether any such warning had ever been given to the deceased, or had been heard by him, does not appear.

The elevator was of a peculiar construction, and evidently of a dangerous character. It was provided, by way of attachment, with a door which automatically closed when the elevator ascended and opened when the elevator descended; or, rather, the door descended as the elevator ascended, and ascended as the elevator descended. This door was

supported and operated by a hempen rope about an inch in diameter attached to the upper part of the door; and, which, passing through and over certain pulleys, was attached at its other end to hooks of the kind known as sister hooks, which were passed through an eye bolt in the top of the elevator and were kept in place by being wrapt and tied with a cord. There was a slack, as it is called, in this rope which connected the door with the elevator carriage, whereby a jolt or jerk was caused, when the elevator in its descent picked up the weight of the door; and this jolt or jerk produced friction which caused the rope to wear out. Unless due care was taken to keep the rope in good condition this fraying or wearing out would cause the door to become detached, and would permit it to fall. It had in fact fallen from this cause about two weeks before the occurrence of the accident of which complaint is made here; and the break had been repaired on that occasion by the elevator boy by tying the sister hooks together by means of an ordinary string.

It appears that, notwithstanding the frailty of all this device, it was the usual mode for operating elevators of the class here used.

On January 7, 1891, the deceased, Albert R. Sakers, had occasion to use the elevator in the business of his employer; and not finding the elevator boy at his post, he entered the elevator alone, and undertook to operate it himself. He ascended to the floor above in safety, procured some desired supplies, and proceeded to descend, still operating the elevator himself. When the elevator had descended to the level of the lower floor, where he had entered, and he was about to get out, it started for some unknown reason to ascend again. Whether this was through some defect in the machinery, or through inconsiderate management on the part of the deceased, does not appear. When it had ascended some distance he undertook to jump out, and was struck and killed by the descending door. His head was caught between the elevator

platform and the door. When soon afterwards, in the attempt to extricate him, the door was torn away, he was found lying on the floor of the elevator, his head crushed by the door, and his hand upon the rope by which the elevator was operated. He was still living, but died about an hour afterwards at one of the hospitals.

These facts are all brought out in the testimony given on behalf of the appellant, the plaintiff below, which is the only testimony in the case; for the motion for a peremptory instruction to the jury was made and allowed at the end of the plaintiff's case. And upon these facts the appellant bases the theory that the market company had negligently permitted the rope, by which the door was attached to the elevator carriage, again to become frayed and worn, and to break, and thus to cause or permit the door to fall, by the falling of which the deceased was killed. We should note, however, that there is some additional testimony bearing upon the subject, but which is not free from discrepancy. It is stated, for instance, that "the door did not fall suddenly until after it struck Sakers, and that it went slowly after it struck him;" that "it went fast before it struck him; that it went faster than the elevator went up; after it struck him it went slowly;" that when Sakers was extricated "it was found that the elevator had stopped at an elevation of about four feet above the floor of the market;" and "that the door, after striking Sakers, went all the way down solid to the ground."

Were the question here one merely as to the negligence of the defendant, the appellee, undoubtedly the testimony would have been amply sufficient to be submitted to a jury. If the market company itself, by its employees, had been operating this exceedingly dangerous machine, as it is shown to have been, at the time of the accident to the deceased, very plainly its liability would have been a matter for the determination of the jury. But the ruling of the court below in the case, we understand both from the record and the argument of counsel, to be based entirely upon the contributory negli-

gence of the deceased. And if, upon the undoubted facts of the case, with all the proper inferences to be drawn therefrom, there was such contributory negligence, we must, of course, affirm the ruling from which the present appeal has ·been taken.

The principles of law applicable to the subject of contributory negligence would seem now to have been well settled by repeated adjudications of the courts, and for us most of all by the decisions of the Supreme Court of the United States; and in most cases now it remains to us only to apply those principles. The province of the court and jury, both with respect to alleged negligence on the part of a defendant and alleged contributory negligence on the part of a plaintiff, is well stated in the latest authoritative utterance by the Supreme Court on the subject. In the case of *Texas and Pacific R. Co.* v. *Gentry,* 163 U. S. 353, 368, that court, by Mr. Justice Harlan, citing and summarizing previous decisions, said :

"When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court." *Grand Trunk Ry. Co.* v. *Ives,* 144 U. S. 408.

The court below seems to have thought, and we think, that the action of the deceased in the case was such that only one reasonable inference can be drawn from it; and that is, that, when he entered this elevator car, without permission, express or implied, from the defendant company, and without the knowledge of that company, the risk of its safe management which he undertook was exclusively his own risk. If that elevator was then in an unsafe condition, there was all the greater reason why he should not have used it. If he did not know that it was in such unsafe condition, he has no right to charge his ignorance to the account

of the company, which did not invite his use of it, had no
knowledge of such use, and, so far as we may justly infer
from the record, protested against the operation of the ele-
vator by any one other than its own employees.  As well
might one enter a livery stable, and without the knowledge
or consent of the keeper of the stable, harness a fractious
horse to a defective conveyance, ride away, and, if injured
by some breakdown of the conveyance, attempt to hold the
keeper of the stable to liability.  If there had been any proof
of usage or custom on the part of the market men to use
this elevator themselves, with the sanction, express or im-
plied, of the defendant company, the case would have been
very different; but there was no such proof.  On the con-
trary, the proof was, so far as it went, that the company
would not permit any such use.

Again, the circumstances of the death of Sakers would
indicate either that he attempted to jump from the ascend-
ing elevator, or that he unduly exposed his head to the
descending door.  Both of those were acts of rashness which
it was incumbent on the plaintiff to explain.  Such acts,
although rash in themselves, may be explained or excused
by circumstances, as by the presence, or even the apprehen-
sion, of greater danger.  But in the absence of all explana-
tion, these acts must be taken to be, what in the usual course
of conduct they are, acts of rashness, the consequences of
which are to be charged to those who commit them.  It is
not proper to send them into a jury room for a jury to con-
jecture whether there might not be an excuse for them.

We are of opinion that the Supreme Court of the District
of Columbia was right in its ruling in this case; and that its
judgment should be *affirmed with costs.   And it is so ordered.*

Mr. Justice BRADLEY, of the Supreme Court of the Dis-
trict of Columbia, who sat with the court in the hearing of
this cause in the place of Mr. Chief Justice ALVEY, dissenting:

This action was brought to recover damages for the death

of Albert R. Sakers, alleged to have been caused January 7, 1891, by the negligence of the defendant. Sakers was a youth of nineteen years, industrious, faithful, conscientious and intelligent. He had been for a year in the employ of one Brown, who carried on business in the Center Market. Brown was tenant to the defendant.

The defendant controlled and operated in the market house an elevator used for the purpose of carrying the tenants and their employees from floor to floor in the building. In the course of their business they were customarily so carried. When the elevator boy was absent from his post, which frequently happened, the tenants and their employees were accustomed to operate the elevator themselves. Some of them were warned against the practice, but it did not appear that any warning was ever given to Sakers, or that it was ever brought to his knowledge.

The door of the elevator shaft was operated automatically by the ascent and descent of the car. When the car ascended, the door was lowered and closed, and when it descended, the door was raised and opened. This was accomplished by means of a rope which was attached to the top of the car, and to the top of the door, and passed over pulleys in the upper part of the elevator shaft. The rise and fall of the door was six feet, and there was a slack in the rope when the door rested upon the floor. In taking up this slack by the descent of the car, the weight of the door was lifted with a jerk which caused a strain upon the fastenings of the rope. This fastening at the top of the car was slight, and flimsy in character; it was frayed and loosened by the constant jerking; it gave way two weeks before the accident causing the door to fall, and one week before the accident the fastening was found to be disengaged when it was secured by a piece of common string.

On the day of the accident Sakers had occasion to use the elevator on the business of his employer. Not finding the elevator boy at his post, he entered the car alone, went to

the upper floor, performed his errand, and brought the car to the starting point in safety. The door being then open, and the car all the way down, he started to step out, the elevator car started up, and the door began to descend. He was struck on the head by the door, which fell all the way to the floor. To extricate Sakers, it was necessary to break away the door; which done, revealed the car standing at an elevation of *four* feet only, Sakers lying on its floor with his head crushed, his hand upon the operating rope, and some sweet breads lying beside him. Death followed in a few minutes after the body was removed. Although the door had fallen six feet, the car had ascended but four feet. In the ordinary operation of the elevator, but a second of time was sufficient for the car to ascend two feet and the door to descend the same distance, thus closing an aperture of four feet between the floor of the car and the bottom of the door.

There were stairs leading to the upper floor of the market house, but some testimony tended to show that the door to those stairs was closed.

There are inconsistencies and contradictions in the testimony given in the record with reference to the rate of speed at which the door descended before and after it struck the deceased, and to the position of the car when he attempted to alight, which but emphasize the uncertainty of the evidence tending to show negligence or want of care on the part of Sakers, and their rehearsal is unnecessary.

I concur with the justices whose views are expressed in the opinion of the court in their conclusion that the testimony is such with reference to the negligence of the defendant as to require the submission of that question to the jury. But I am unable to agree with them that the testimony is so clear, or conclusive, as to the negligence of the deceased contributing to the injury, that the trial court had the right to direct a verdict for the defendant upon that ground.

The question appears to me to be sufficiently interesting

and important to justify the statement of the reasons for my dissent.

The deceased was not a trespasser; he was rightfully in the elevator.    It was provided for the use of tenants and their employees.    His employer was a tenant, and he was engaged in the business of his employer.    He had a right to be carried. The elevator boy was absent; the door was open; there was no notice posted forbidding the operation of the machine by others than the elevator boy; he had not been warned not to operate it, and he followed the practice known by the defendant to exist when he operated it himself.

In *Chicago, &c., Ry. Co.* v. *Lowell*, 151 U. S. 209, it appeared that the plaintiff, a passenger, reaching his station, disregarded a notice conspicuously posted at the end of the car directing passengers to alight on the other side, and alighted upon the ground next to other tracks, in attempting to cross over which he was injured.    There was a platform at the other side of the car, alighting upon which the plaintiff would have avoided the injury.    He was a daily passenger upon the road, but had never read the notice.    The notice was habitually disregarded by the passengers.    The collector of his ticket saw him get off, and said nothing.

The trial court was asked to direct a verdict for the defendant because of the plaintiff's negligence, and its refusal was assigned as error.

The court said: "The defendant should not be allowed to rely exclusively upon a breach of its regulation.    In this particular the case resembles that of the *Dublin, etc., Ry. Co.* v. *Slattery*, 3 App. Cases, 1155, in which the House of Lords held that a notice not to cross the tracks which the company had permitted to fall into desuetude, and made no attempt to enforce, did not debar the plaintiff who had disregarded it from a recovery.    .    .    .    Proof that the plaintiff violated the regulations of the company, even without the excuse of a cogent necessity, will not as a matter of law debar him from recovery."

There was reason to claim in the case at bar, that the deceased, under the circumstances in evidence, operated the machine at the invitation of the defendant. If that question were important it was the province of the jury to determine it.

The question was apparently unimportant, however, for whether the deceased operated the machine upon the implied permission or invitation of the defendant or without it, he assumed all the risks that were incident to his act, and no recovery could be had for any injury of which the operation of the elevator was wholly or in part the proximate cause. He was an intelligent boy of nineteen years, capable of appreciating the ordinary danger attending the handling of the machine. But in either case, if the injury were occasioned solely by defective construction of the machine or by unsafe appliances—in other words, by the negligence of the defendant—the right of recovery would exist.

Does the testimony show such a state of facts, that all reasonable men must draw from them the inference that the deceased was wanting in care, and that such want of care was a proximate cause of the injury? Unless it does, the question of the negligence of the deceased should have been submitted to the jury. *Grand Trunk R. Co.* v. *Ives,* 144 U. S. 408, 417; *Gardner* v. *Michigan Central R.,* 150 U. S. 349, 361; *Texas & Pacific Ry. Co.* v. *Gentry,* 163 U. S. 353, 368.

1. It is not enough to say that if he had not been in the elevator he would not have received the hurt.

If the fall of the door were due solely to the negligence of the defendant, and that were the proximate cause of the injury, then the act of the deceased in putting himself in the car, considering it to have been improper conduct, could not be regarded as any part of the cause of the injury. Such preceding negligence, if it could be properly so termed, would be a mere condition, and not a contributing cause. *Washington* v. *B. & O. R.,* 17 W. Va. 190; *Thirteenth & F Sts. Pass. R.* v. *Boudran,* 92 Pa. St. 475; *Scheffer* v. *Railroad Co.,* 105 U. S. 249.

In the last case cited, the declaration alleged that the plaintiff's testator was injured in a collision caused by the carelessness of the defendant; that such injury was about the head and spine, occasioned a disordered brain, and finally after several months of suffering, induced the sufferer to take his own life.   The defendant was sued under a Virginia statute giving the right of recovery for death caused by negligence.   The declaration was demurred to, and the demurrer sustained.   In affirming the judgment, Justice Miller, citing *Milwaukee and St. Paul Ry. Co.* v. *Kellogg,* 94 U. S. 469, and *McDonald* v. *Snelling,* 14 Allen, 290, said: " The proximate cause of the death of Scheffer was his own act of self-destruction.   It was within the rule of both of these cases a new cause, and a sufficient cause of death."

The same justice, in a previous decision, had stated the doctrine of a remote and proximate cause in these words: " If a new force or power has intervened of itself sufficient to stand as the cause of the misfortune, the other must be considered as too remote."   *Insurance Co.* v. *Tweed,* 7 Wall. 52.

In his admirable treatise upon the law of Torts, Mr. Pollock states the proposition thus: " He (the plaintiff) is not to lose his remedy because he has been negligent at *some* stage of the business, though without that negligence the subsequent events might not, or could not, have happened; but only if he has been negligent in the final stage, and at the decisive point of the event so that the mischief as and when it happened is approximately due to his own want of care."   Pollock, Torts, 375.

The deceased successfully operated the machine in its entire trip until it reached the floor upon its return.   Was he negligent at that point either in its operation, or in his effort to alight from the car?

2. When the elevator was all the way down, he started to get out, and at the same time it began to ascend.   If his act caused the car to move upward, and that movement contributed to the event, his want of care was in part the prox-

imate cause of his injury, and the plaintiff was not entitled to recover. The only evidence upon that point was the fact that the car ascended, that it stopped at an elevation of four feet, and that the deceased was found with his hand upon the rope by which the elevator was operated. It must be remembered that the burden of proving that the deceased exercised due care did not rest upon the plaintiff. For aught that appears, the car may have ascended from some defect in the machinery after the deceased had exercised all necessary care in stopping it, and without any interference by him with the operating rope. It does not clearly appear that he caused it to start upward, and the plaintiff in making out his case was not called upon to prove that it did not. Whether he did or not, was a question for the jury to determine by such inferences as they could legitimately draw from the circumstances in evidence. The inferences to be drawn were not so certain and incontrovertible, as to justify the court in deciding, as matter of law, that he caused the upward movement of the car by his own act.

3. How was it with reference to the attempt to alight? Notwithstanding the inconsistencies and contradictions in the testimony, it is stated that when the car was all the way down, he started to get out, and *as* he leaned forward the car began to rise, and the door to descend. He was struck upon the head by the descending door, while in that attitude, in the act of alighting. It required but a second of time for the car to ascend two feet, and the door to descend the same distance, thus reducing the space between the floor of the car and the bottom of the door to two feet. In that second, and in that emergency, if it were *possible* for him to step back and save himself, he was required to determine which course he would pursue, and to act. It may have been impossible for him to retreat out of the way of the descending door before he was struck. The testimony does not show that it was possible. He may not have pursued the best possible course under the circumstances, but the

assumption that he acted recklessly and rashly is not warranted by the statement of the evidence.

The question of the exercise of due care in sudden emergencies, by a person called upon to act under peculiar circumstances, should be always submitted to a jury. A party so situated is not held to the exercise of the same degree of caution that would be expected under ordinary circumstances, and the inferences to be drawn from this act are not uniform or certain. *Kane* v. *Northern Central Ry.*, 128 U. S. 91; *Union Pacific R. Co.* v. *McDonald*, 152 U. S. 262.

In the first case cited a brakeman in the employ of the defendant was injured by falling from a freight car while in the act of letting himself down upon a step which a few hours before he had noticed was off, but which fact he overlooked in the hurry of going to his post in sleet, rain and cold. The trial court directed a verdict for the defendant on the ground of plaintiff's negligence. Upon error to the Supreme Court of the United States, Justice Harlan, delivering the opinion of the court, said: "In determining whether an employee has recklessly exposed himself to peril or failed to exercise the care for his personal safety that might be reasonably expected, regard must always be had to the exigencies of his position; indeed, to all the circumstances of the particular occasion." And after reviewing the testimony he concluded: "We are of opinion that the court erred in not submitting to the jury to determine whether the plaintiff, in forgetting or not recalling at the precise moment the fact that the car from which he attempted to let himself down was the one from which this step was missing, was in the exercise of the degree of care and caution which was incumbent upon a man of ordinary prudence in the same calling and under the circumstances in which he was placed."

In the second case the same doctrine was announced, where the circumstances were that a lad of 12 years, in broad day light, frightened by other lads, ran along a path

and fell into a burning slack heap, which was in plain view beside the path.

Inasmuch as the testimony tending to show negligence of the defendant in the insecurity of the door attachments, and that the fall of the door was a proximate cause of the injury to the deceased, was sufficient to go to the jury, and as I am of opinion that the testimony tending to show want of due care on the part of the deceased which co-operated with the defendant's negligence in producing the injury as a proximate cause, was not sufficiently clear for the court to determine as matter of law that the plaintiff could not recover, the judgment ought to be reversed, and a new trial directed.